IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ILLINOIS BIBLE COLLEGES ASSOCIATION, on its own behalf and on behalf of students who seek or may seek religious education from Illinois Bible colleges, PROVIDENCE BAPTIST COLLEGE, DAYSPRING BIBLE COLLEGE & SEMINARY, UNITED FAITH CHRISTIAN INSTITTUE AND BIBLE COLLEGE, CIVIL LIBERTIES FOR URBAN BELIEVERS, LEIGH PIETSCH<br><br>Plaintiffs,<br><br>v.<br><br>LINDSAY K. H. ANDERSON, Chair of the Illinois Board of Higher Education, in her Official Capacity,<br><br>Defendant. | CASE NO. _____<br><br>Judge _____ |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Illinois Bible Colleges Association ("IBCA"), Providence Baptist College, Dayspring Bible College & Seminary, United Faith Christian Institute and Bible College, Civil Liberties for Urban Believers, and Leigh Pietsch, individually, by their attorneys Mauck & Baker, LLC, hereby request a declaratory judgment against Defendant affirming the liberty of Illinois Bible colleges to operate and grant degrees free from various governmental controls and restrictions.

1

## NATURE OF THE ACTION

1. This is an action to enforce Plaintiffs' rights under the First Amendment to the United States Constitution, under the Constitution of the State of Illinois, and under the Illinois Religious Freedom Restoration Act (IRFRA), 775 ILCS § 35/15 *et seq.*, that are violated by certain regulations which prevent Illinois Bible colleges from operating and granting degrees to achieving students without being approved by the Illinois Board of Higher Education ("IBHE").

2. Plaintiffs do not challenge the State's authority to regulate secular institutions or religious institutions that offer a secular education. Plaintiffs only contend that the State does not have the authority to set standards for religious education and training or to determine qualifications for individuals in ministry positions.

## JURISDICTION AND VENUE

3. The court has jurisdiction over the aforementioned federal claim pursuant to 28 U.S.C. §1331 as it arises under the First Amendment to the Constitution of the United States. The state law claims are so closely related to the federal claims as to create supplemental jurisdiction under 28 U.S.C. §1367(a).

4. Venue is proper in this court because many of the Plaintiffs are located in Cook, DuPage, Kane, and Will Counties, Illinois.

## PARTIES

5. Plaintiff Illinois Bible Colleges Association is an unincorporated association comprised of private, post-secondary Illinois Bible colleges that offer Biblical education in preparation for vocations in churches and ministries.

6. Plaintiff Providence Baptist College ("PBC") is an Illinois Bible college located at 345 W. River Rd., Elgin, IL, 60123. PBC was founded on August 24, 1998 as a post-secondary religious educational ministry of Northwest Bible Church. PBC defines itself as a distinctive Bible college dedicated to training young people for full-time service in Independent Baptist churches and ministries around the world. Exh A. at ¶¶ 2-4.

7. Plaintiff Dayspring Bible College & Seminary ("DBCS") is an Illinois Bible college located at 27875 N. Fairfield Rd, Mundelein, IL 60060. DBCS was founded in 1982 as a post-secondary religious educational ministry of Quentin Road Bible Church, now Quentin Road Bible Baptist Church. DBCS exists to provide affordable Bible-based education and training to those who are motivated to serve God and who want to integrate their faith into whatever they do in life after graduation. Exh. B at ¶¶ 2-4.

8. Plaintiff United Faith Christian Institute and Bible College ("UFCI") is an Illinois Bible college located at 40 S. 19th Avenue, Maywood, IL 60153. UFCI was founded in 2000 as a post-secondary religious educational ministry of the United Faith Missionary Baptist Church. UFCI provides affordable education in an urban context for those seeking to do ministry in the inner cities. Exh C. at ¶¶ 2-4.

9. Plaintiff Civil Liberties for Urban Believers ("CLUB") is an unincorporated association of churches organized to promote civil liberties for urban believers. CLUB seeks to empower churches to create educational ministries that desire to train and equip those who are called by God to serve His Kingdom. Exh. D ¶¶ 2, 5.

3

10. Plaintiff Leigh Pietsch, Esq. is an individual enrolled in the Chicago campus of Charis Bible College and is seeking a degree for his religious studies. Exh. E at ¶¶ 2, 10.

11. The Illinois Bible Colleges Association is also asserting the rights and interests of students who seek or may seek religious education in Illinois. *See generally*, *Singleton v. Wulff*, 428 U.S. 106 (1976); *see also Craig v. Boren*, 429 U.S. 190, 194 (1976).

12. Defendant Lindsay K. H. Anderson, in her official capacity, is the Chair of the Illinois Board of Higher Education. Among other duties, she and the other board members grant authority to operate and grant degrees to independent educational institutions.

## FACTS

### I. Illinois' Education Statutes

13. Illinois Bible colleges provide a unique, Biblical education for individuals who feel called by God to enter into ministry. They offer programs in religious subjects only. They do not offer programs in any secular subject. One such college, Dayspring Bible College in Mundelein, Illinois, is pictured below:



14. Students enroll at Illinois Bible colleges in order to equip themselves with the knowledge and practical experience necessary for ministry, evangelism, and service for Jesus Christ. Specifically, students are trained to spread the gospel message: that God loves humanity so much that he sent His son Jesus to die on the cross for our sins, and that whoever believes in Jesus and accepts this free gift of salvation will have peace with God and eternal life. *John 3:16*.

15. The objectives of Illinois Bible colleges are to provide affordable education in order to:

> a. Equip students with the practical skills necessary to communicate the gospel message to the world. *Matthew 28:19-20*.
>
> b. Help students to strengthen their personal relationship with Jesus Christ.
>
> c. Train students for careers as pastors, ministers, evangelists, missionaries, youth ministers, theologians, worship leaders, and church administrators.

16. According to a research analyst report from 2007, "28 states exempt religious schools or bible colleges from their higher education licensing, certification or accreditation process." (*see* http://www.cga.ct.gov/2007/rpt/2007-R-0023.htm). In Illinois, however, all degree-granting institutions, including Bible colleges, must obtain approval from the IBHE in order to operate and grant degrees.

17. Section 2 of the Illinois Private College Act ("PCA"), 110 ILCS 1005/2, provides:

> After July 17, 1945, no person or group of persons may establish and operate or be permitted to become incorporated for the purpose

of operating a post-secondary educational institution without obtaining a certificate of approval from the Board so to do.

18. 110 ILCS 1005/1 of the PCA defines "post-secondary educational institution" as:

> a privately-operated college, junior college or university offering degrees and instruction above the high school level either in residence or by correspondence.

19. 110 ILCS 1005/1 of the PCA defines "degree" as:

> any designation, appellation, series of letters or words, or other symbol which signifies or purports to signify that the recipient thereof has satisfactorily completed an organized academic program of study beyond the secondary school level.

20. Under the PCA, all degree-granting institutions, including religious institutions, are required to obtain State approval to operate and grant degrees in Illinois. A religious institution may not award an "Associate's," "Bachelor's," "Master's," or "Doctorate" degree in any field unless it first obtains approval from the IBHE.

21. In order to obtain a certificate of approval, an institution must meet the adopted standards of section 4 of the PCA. The statute provides:

> Upon the filing of an application for a certificate of approval the Board shall make an examination to ascertain:
> 1. That each course of instruction to be offered or given is adequate, suitable, and proper;
> 2. That the fee to be charged for the courses of instruction, and the conditions and terms under which such fees are to be paid are reasonable;
> 3. That an adequate physical plant and adequate facilities are provided;
> 4. That the members of the teaching staff are adequately prepared to fulfill their instructional obligations;
> 5. That the institution does not promise or agree to any right or privilege in respect to professional examinations or to the practice of any profession in violation of the laws of this State;
> 6. That the institution does not offer inducements that are designed to deceive the prospective student or make any

6

>>promises which it does not have the present means or ability to perform.
>>
>>If the examination shows that the applicant has such qualifications a certificate of approval shall be issued.

22. In addition, regulations contained in the Illinois Administrative Code ("IAC"), 23 Ill. Adm. Code § 1030, are used to evaluate institutions seeking authorization to operate and grant degrees.

23. The IAC contains, *inter alia*, the following requirements for IBHE approval:

> a. The caliber and content of each course or program of instruction, training, or study shall be reasonable and adequate for achieving the stated degree objectives for which the course or program is offered. 23 Ill. Adm. Code § 1030.30(a)(2).
>
> b. Degree programs must meet certain credit hour requirements. 23 Ill. Adm. Code § 1030.30(a)(2)(C).
>
> c. The education, experience and other qualifications of faculty, staff and instructors shall reasonably ensure that the students will receive education consistent with the objectives of the course or program of study. 23 Ill. Adm. Code § 1030.30(a)(4).
>
> d. At a minimum, faculty shall have a degree from an institution accredited by a U.S. Department of Education recognized accrediting body or a degree from another country evaluated for U.S. equivalency in the discipline they will teach or for which they will develop curricula at least one level above that of the courses being taught or developed. 23 Ill. Adm. Code § 1030.30(a)(4)(A).
>
> e. Faculty providing undergraduate general education coursework shall possess, at a minimum, a master's degree in the field of instruction. 23 Ill. Adm. Code § 1030.30(a)(4)(A)(i).
>
> f. Faculty teaching in a graduate program shall have a doctorate or terminal degree in the field of instruction. 23 Ill. Adm. Code § 1030.30(a)(4)(A)(iv).
>
> g. Exceptions may be made for professional experience, equivalent training and other qualifications; however, these should be the

>>exceptions and not the rule in meeting faculty qualification requirements. These exceptions for faculty may be recommended by the Board staff. 23 Ill. Adm. Code § 1030.30(a)(4)(A)(v).

24. Requirements a, c, and g enumerated in ¶ 19 constitute individual assessments as defined in *Employment Division v. Smith*, 494 U.S. 872 (1990).

25. Section 15 of the PCA, provides:

>>Any person violating any provision of this Act shall be guilty of a petty offense and fined not less than $25 nor more than $100. Each day's violation of any provision of this Act shall constitute a separate offense.

26. The Plaintiffs' rights are also violated under the Illinois Academic Degree Act ("ADA"), 110 ILCS 1010/0.01 *et seq*.

27. Section 3 of the ADA states that "[a] degree or any object in evidence thereof may be awarded only by a degree granting institution."

28. Section 2 of the ADA defines "degree granting institution" as:

>>an educational facility maintained by any person, partnership, public or private corporation or public body and operating as a school, academy, institute, private junior college, college, university or entity of whatever kind which furnishes or offers to furnish instruction leading toward or prerequisite to an academic or professional degree beyond the secondary school level . . . .

29. Section 2 of the ADA defines "degree" as:

>>any designation, appellation, series of letters or words, or other symbol which signifies or purports to signify that the recipient thereof has satisfactorily completed an organized academic program of study beyond the secondary school level.

30. Section 4(a) of the ADA specifies that:

>>Unless a degree granting institution was authorized to operate in Illinois, or was in operation, on August 14, 1961, it shall not award any earned degree until one year after it has filed a written notice with and until such institution has received the authorization and approval of the Board.

8

31. Like the PCA, the ADA mandates that all degree-granting institutions, including religious institutions, are required to obtain authorization to operate and grant degrees in Illinois. A religious institution may not award an "Associate's," "Bachelor's," "Master's," or "Doctorate" degree in any field unless it first obtains appropriate authorization from the IBHE.

32. Plaintiffs also seek a broader exemption from the Illinois Private Business and Vocational Schools Act of 2012 ("PBVSA"), 105 ILCS 426 *et seq*.

33. Like the previous two statutes, the PBVSA seeks to regulate the establishment and operation of certain educational institutions.

34. The PBVSA differs from the PCA and the ADA in that it explicitly makes exemptions for religious schools:

> Section 15- ""Program of study" as used in this definition means any academic program beyond the secondary school level, except for a program that is devoted entirely to religion or theology."
>
> Section 20- ". . . a permit of approval is not required for a program that is devoted entirely to religion or theology . . . ."
>
> Section 30- "For purposes of this Act, the following shall not be considered to be a private business and vocational school: (1) Any institution devoted entirely to the teaching of religion or theology."

35. The exemption provided by the PBVSA is insufficient as it relates to religious schools which offer courses that some may view as "secular" but which incorporate significant religious or faith based instruction and are part of a comprehensive program to equip students to integrate their religion or faith into their life, career, or work.

9

36. The Illinois Bible colleges oppose obtaining State approval in order to operate and grant degrees for a number of reasons including, but not limited to, the following:

   a. Obtaining State approval in order to operate and grant degrees would interfere with the Church's and the College's religious liberty to direct religious education as they see fit. Seeking State approval would abdicate the Church's ultimate authority to guide the teaching of the College. Exh. A at ¶ 18.

   b. Obtaining State approval would subordinate to the State and to the IBHE the Church's responsibility to God in deciding how to properly educate students in religious teaching and in deciding who should do the teaching. Exh. B at ¶ 24.

   c. Obtaining State approval and answering to the State will inevitably water down the doctrine of the College and the Church. *Id*. at ¶ 18.

   d. Obtaining State approval to operate and grant degrees would interfere with the College's and the Church's religious liberty to direct religious education as they see fit. The College's religious education is predicated on the Bible and it does not wish to ascribe to the dictates of secular educational regulations. Exh. C at ¶ 15.

   e. Obtaining State approval to operate and grant degrees would impose requirements which would obstruct the College's mission to instruct students according to the tenets of our faith by telling the College who is and who is not qualified to offer religious instruction at the College. Exh. A at ¶¶ 19-20; Exh. B at ¶¶ 21-22; Exh. C at ¶ 16.

37. Plaintiffs' inability to grant degrees without State approval substantially burdens their religious exercise in a multitude of ways, including, but not limited to:

   a. Creating uncertainty as to how to communicate to the students the position of the State and the status of the colleges. Students are uncertain about their education at the colleges. Exh. A at ¶ 25; Exh. B at ¶ 25; Exh. C at ¶ 19.

      b.      Reducing the attractiveness of the colleges to potential students and the loss of actual students. Exh. A at ¶ 22; Exh. B at ¶ 20

      c.      Diminishing marketing appeal to potential donors/supporters and thus limiting fundraising efforts. Exh A. at ¶ 25; Exh B. at ¶ 25; Exh. C at ¶ 19.

      d.      Restricting the colleges' ability to compete against State approved schools or similar out-of-state schools. Exh. A at ¶ 22; Exh. B at ¶ 6; Exh C at ¶ 5.

      e.      Implying that the colleges promote inferior education. Exh. A at ¶ 22; Exh. B at ¶20; Exh. C at ¶ 18.

38. Plaintiffs seek a declaratory judgment that the PCA and the ADA, as applied to Bible colleges, violates the Establishment Clause, Free Exercise Clause, and Free Speech Clause of the First Amendment to the United States Constitution, Article 1 of the Constitution of the State of Illinois, and the Illinois Religious Freedom Restoration Act.

39. Plaintiffs also seek a declaratory judgment that the exemption provided in the PBVSA, as applied to Bible colleges, is too narrow and therefore violates the Establishment Clause, Free Exercise Clause, and Free Speech Clause of the First Amendment to the United States Constitution, Article 1 of the Constitution of the State of Illinois, and the Illinois Religious Freedom Restoration Act.

## CAUSES OF ACTION

### COUNT I
### ESTABLISHMENT CLAUSE

40.     Plaintiffs reallege ¶¶ 1-39.

41.     In setting standards for a religious education, the Illinois education statutes, as set forth above, violate the Establishment Clause of the First Amendment.

42.     Because the Establishment Clause prohibits the government from determining what a church should be, the government cannot determine the qualifications a cleric should have and likewise cannot set standards for religious education or training. *Gonzalez v. Roman Catholic Archbishop of Manila*, 280 U.S. 1, 16 (1929) ("[I]t is the function of the church authorities to determine what the essential qualifications of a chaplain are and whether the candidate possesses them."); *Lemon v. Kurtzman*, 403 U.S. 602, 625 (1971) ("Under our system the choice has been made that government is to be entirely excluded from the area of religious instruction and churches excluded from the affairs of government.").

43.     The Illinois education statutes excessively entangle the government in matters of religious activity and constitute a flagrant violation of the Establishment Clause of the First Amendment.

**WHEREFORE**, Plaintiffs respectfully pray that the Court grant the relief set forth in the prayer for relief.

### COUNT II
### FREE EXERCISE OF RELIGION

44.     Plaintiffs reallege ¶¶ 1-39.

45. The Illinois education statutes constitute an infringement of the Bible colleges' rights to the Free Exercise of Religion under both the First Amendment to the United States Constitution and Article I of the Constitution of the State of Illinois.

46. The IBHE has no compelling interest with which to justify its insistence that Illinois Bible colleges obtain State approval from the agency before they can operate and grant religious degrees.

47. Similarly, the IBHE has not demonstrated that requiring Illinois Bible colleges to obtain State approval before they can operate and grant religious degrees is the narrowest alternative to achieving any governmental interest.

**WHEREFORE**, Plaintiffs respectfully pray that the Court grant the relief set forth in the prayer for relief.

## COUNT III
## FREEDOM OF SPEECH

48. Plaintiffs reallege ¶¶ 1-39.

49. Illinois Bible colleges' religious speech activities—teaching, worship, prayer, labeling, and titling—are protected under the Free Speech Clause of the First Amendment and Article I of the Constitution of the State of Illinois.

50. In prohibiting and/or unreasonably limiting, through its application of the Illinois Administrative Code ("IAC"), Illinois Bible colleges' ability to engage in such religious speech activity by using words like "degree" to mark student achievement, the IBHE has restricted the colleges' free speech.

51. The IBHE's application of the IAC to Illinois Bible colleges violates the Free Speech Clause of the First Amendment to the United States Constitution as

incorporated and applied to the states through the Fourteenth Amendment, as well as Article I of the Constitution of the State of Illinois.

**WHEREFORE**, Plaintiffs respectfully pray that the Court grant the relief set forth in the prayer for relief.

## COUNT IV
## ILLINOIS RELIGIOUS FREEDOM RESTORATION ACT

52. Plaintiffs reallege ¶¶ 1-39.

53. The Illinois education statutes, as set forth above, constitute an infringement of Illinois Bible colleges' First Amendment rights to the Free Exercise of Religion as contemplated by IRFRA.

54. Section 15 of the Illinois Religious Freedom Restoration Act of 1998 ("IRFRA"), 775 ILCS 35/15, states:

> Free exercise of religion protected. Government may not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless it demonstrates that application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling governmental interest.

55. According to 775 ILCS 35/20 of IRFRA, a claim may be raised under IRFRA in this case:

> Judicial relief. If a person's exercise of religion has been burdened in violation of this Act, that person may assert that violation as a claim or defense in a judicial proceeding and may obtain appropriate relief against a government. A party who prevails in an action to enforce this Act against a government is entitled to recover attorney's fees and costs incurred in maintaining the claim or defense.

56. The IBHE's legal position substantially burdens Illinois Bible colleges' free exercise of religion. The IBHE has no compelling interest with which to justify its

insistence that Illinois Bible colleges obtain State approval from the agency before they can operate and grant religious degrees.

**WHEREFORE**, Plaintiffs respectfully pray that the Court grant the relief set forth in the prayer for relief.

## COUNT V
## EQUAL PROTECTION

57. Plaintiffs reallege ¶¶ 1-39.

58. The U.S. Supreme Court has recognized that "the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the Amendment to secure." *Truax v. Raich*, 239 U.S. 33, 41 (1915).

59. In prohibiting college students from obtaining degrees from religious postsecondary educational institutions which the IBHE has not "approved," the State is inhibiting their ability to earn a living by making their education less valuable to the community.

**WHEREFORE**, Plaintiffs respectfully pray that the Court grant the relief set forth in the prayer for relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court:

A. Enter a declaratory judgment that Illinois Bible colleges may create and operate religious post-secondary degree granting educational institutions without obtaining State approval from the Illinois Board of Higher Education;

B. Enter a declaratory judgment that the Illinois Private Colleges Act, 110 ILCS 1005/.01 *et seq*, and the Illinois Academic Degree Act, 110 ILCS 1010/0.01 *et seq,* as applied to Illinois Bible colleges, violate the Establishment Clause, Free Exercise Clause, and Free Speech Clause of the First Amendment to the United States Constitution, Article 1 of the Constitution of the State of Illinois, and the Illinois Religious Freedom Restoration Act;

C. Enter a declaratory judgment that the exemption in the Illinois Private Business and Vocational Schools Act of 2012, 105 ILCS 426 *et seq*, for programs "devoted entirely to religion or theology," as applied to Illinois Bible colleges, is too narrow and violates the Establishment Clause, Free Exercise Clause, and Free Speech Clause of the First Amendment to the United States Constitution, Article 1 of the Constitution of the State of Illinois, and the Illinois Religious Freedom Restoration Act, unless the exemption also encompasses secular subjects including business, trade, or vocational instruction, so long as the education incorporates significant religious or faith based instruction and is part of a comprehensive program to equip the student to integrate his or her religion or faith into his or her life, career, or work.

D. Enter a declaratory judgment that the regulations contained in the Illinois Administrative Code ("IAC"), 23 Ill. Adm. Code § 1030, as applied to Illinois Bible colleges, violate the Establishment Clause, Free Exercise Clause, and Free Speech Clause of the First Amendment to the United States Constitution, Article 1 of the Constitution of the State of Illinois, and the Illinois Religious Freedom Restoration Act.

E. Enter a declaratory judgment enjoining Defendant in her official capacity and her successors from requiring State approval from the IBHE for any faith based educational

16

institution that offers degrees only in the areas of religion, faith, faith based living, theology, Biblical studies, or other religious studies.

F.   Enter a declaratory judgment declaring that the Free Exercise, Free Speech, and Establishment Clauses of the First Amendment and the corresponding clauses of the Illinois Constitution allow religious post-secondary educational institutions in Illinois to use the terms "Associate's," "Bachelor's," "Master's," or "Doctorate" in the granting of degrees in the area of religious education, including, by way of example and not limitation, degrees which use words such as Bible, Biblical, Church, Pastoral, Christian or Theological.

G.   Enter a declaratory judgment declaring that the degrees which this Court may rule that Plaintiffs are allowed to award, may also be granted retroactively to the prior graduating classes of the educational institutions if the institutions judge such degrees to have been earned in effect.

H.   Award attorney fees, expenses and costs to Plaintiffs pursuant to 42 U.S.C. §1988(b); and

I.   Award any other relief this Court deems just.

**Respectfully Submitted,**
**ILLINOIS BIBLE COLLEGES**
**ASSOCIATION**

/s/ John W. Mauck_____

MAUCK & BAKER
John Mauck
Noel Sterett
Sorin Leahu* (pending registration)
1 N. LaSalle Suite-600
Chicago IL 60602
Office: (312) 726-1243
Fax: (866) 619-8661