# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ILLINOIS BIBLE COLLEGES ASSOCIATION, et al., | ) ) ) |
| Plaintiffs, | ) ) ) Case No. 15 cv 444 |
| v. | ) ) Judge Sharon Johnson Coleman |
| LINDSAY K. ANDERSON, Chair of the Illinois Board of Higher Education, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs filed a six-count First Amended Complaint against the Illinois Board of Higher Education, through its chairperson, alleging that the Private College Act, 110 ILCS 1005/0.01 *et seq.*, the Academic Degree Act, 110 ILCS 1010/0.01 *et seq.*, and the Private Business and Vocational Schools Act of 2012, 105 ILCS 426/1 *et seq.*, violate the U.S. Constitution and the Illinois Religious Freedom Restoration Act, 775 ILCS 35/5 *et seq.*. Defendant moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons stated herein, the Court grants the motion and dismisses the complaint.

**Background**

Plaintiffs are the Illinois Association of Bible Colleges, Providence Baptist College, Dayspring Bible College & Seminary, United Faith Christian Institute and Bible College, Civil Liberties for Urban Believers, and student Leigh Pietsch (collectively "the Bible Colleges"). The statutes plaintiffs challenge, the Private College Act, 110 ILCS 1005/0.01 *et seq.*, the Academic Degree Act, 110 ILCS 1010/0.01 *et seq.*, and the Private Business and Vocational Schools Act of 2012, 105 ILCS 426/1 *et seq.*, regulate the operations of certain post-secondary and educational institutions. The Illinois Board of Higher Education administers these statutes. The particular

1

provisions at issue impose certain regulatory requirements that must be satisfied in order for a post-secondary educational institution to issue degrees.

The Private College Act governs privately-operated colleges, junior colleges, and universities that offer degrees. To operate such an institution, the Private College Act requires a certificate of approval from the Illinois Board of Higher Education. 110 ILCS 1005/2. According to the Illinois Administrative Code, the Board of Higher Education may evaluate, among other things, "the caliber and content of each course or program of instruction," the physical plant, the number of credit hours required for undergraduate and graduate degrees, the educational credentials of faculty and applicants, the institution's finances, and the institution's record-keeping. 23 Ill. Adm. Code 1030.30. The statute defines a "degree" as "any designation, appellation, series of letters or words, or other symbol which signifies or purports to signify that the recipient thereof has satisfactorily completed an organized academic program of study beyond the secondary school level." 110 ILCS 1005/1.

The Academic Degree Act defines degree the same way as the Private College Act. *See* 110 ILCS 1010/2(b). The Academic Degree Act also requires approval by the Board of Higher Education before an institution can be "degree granting." *Id.* at §3. The Act defines a "degree granting institution" as:

> an educational facility maintained by any person, partnership, public or private corporation or public body and operating as a school, academy, institute, private junior college, college, university or entity of whatever kind which furnishes or offers to furnish instruction leading toward or prerequisite to an academic or professional degree beyond the secondary school level, and which requires that in order to obtain a degree the recipient thereof satisfactorily complete an appropriate course of class, laboratory or research study in person under a faculty whose members hold appropriate academic degrees or whose members possess appropriate moral, intellectual and technical skill and competence; however, this definition does not apply to Illinois public tax supported higher education institutions. 110 ILCS 1010/2(a).

2

Both the Academic Degree Act and the Private College Act contain grandfather clauses, exempting institutions that have been in existence prior to certain dates. See 110 ILCS 1005/2; 110 ILCS 1010/4(a).

The Private Business and Vocational Schools Act of 2012 governs private business and vocational schools and requires approval from the Board of Higher Education. 105 ILCS 426/20. Approved schools may issue "certificates" or "certificates of completion." 105 ILCS 426/15. Before issuing a permit of approval, the Board of Higher Education evaluates schools subject to this act based: the qualifications of Governing Board Members, Owners, and Senior Administrators, faculty and staff; the quality of program delivery; the sufficiency of the institution's finances; the accuracy, clarity, and appropriateness of the program's promotional materials; the sufficiency of the facilities and equipment; the existence of fair and equitable refund policies; the use of appropriate and ethical admissions and recruitment practices; accreditation status; employment in the field of study; legally adequate enrollment agreements; and, clearly communicated tuition and fee charges. Additionally, the institution must explain any legal action against the institution, its owners, board members, etc.; and the school must provide prospective students with a catalog or brochure prior to enrollment. 23 Ill. Adm. Code 1095.40. Schools providing entirely religious or theological education are exempt from the provisions of this Act. 105 ILCS 426/30.

Plaintiffs raise the following allegations in their First Amended Complaint: that the challenged statutes violate the Establishment Clause because mandating approval by the Board of Higher Education to grant "degrees" results in excessive entanglement of government in religious activity (Count I); that the challenged statutes violate the Free Exercise Clause by infringing on plaintiffs' religious liberty under both the U.S. Constitution and the Illinois Constitution (Count II); that the statutes and rules regulating the granting of degrees violate plaintiffs' Freedom of Speech guaranteed by the U.S. Constitution and the Illinois Constitution (Count III); that the challenged

3

statutes violate plaintiffs' First Amendment right to freedom of association (Count IV); that the statutes violate the Illinois Religious Freedom Restoration Act, 775 ILCS 35/5 *et seq.* (Count V); and that the statutes violate the Equal Protection Clause by rendering Bible College students' education less valuable to the community because their course of study is not approved by the Board of Higher Education and the "grandfather clauses" benefit some schools over others (Count VI). Plaintiffs seek exemptions from the challenged statutes.

**Legal Standard**

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8(a)(2) sets forth the minimum pleading requirements of "a short and plain statement of the claim showing that the pleader is entitled to relief….to give the defendant fair notice of what the …claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). When reviewing a motion to dismiss the court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Pisciotta v. Old Nat. Bancorp*, 449 F.3d 629, 633 (7th Cir. 2007).

**Discussion**

Plaintiffs voluntarily dismiss, without prejudice, their state law claims. Thus, this Court will only consider their claims arising from the U.S. Constitution. Defendant asserts that plaintiffs are making a facial challenge to the statutes. However, as this Court reads the allegations it appears that the plaintiffs do not contend that the statutes at issue can never be applied constitutionally and

4

therefore should not apply to any educational institution, but that the statutes are unconstitutional in their application to the Bible Colleges. *See, e.g., Sabri v. United States*, 541 U.S. 600, 604 (2004); *see also* Alex Kreit, *Making Sense of Facial and As-Applied Challenges*, 18 Wm. & Mary Bill Rts. J. 657 (2010) (Mar. 3, 2016), http://scholarship.law.wm.edu/wmborj/vol18/iss3/4. However, plaintiffs are incorrect in their assertion that defendants' argument for dismissal is applicable only to a facial challenge to the statutes and their motion should be denied on that basis. This Court will consider each Count in turn.

*1. Count I – Establishment Clause*

The First Amendment to the U.S. Constitution states that "Congress shall make no law respecting an establishment of religion." U.S. Const., Amend. 1. Defendant argues that plaintiffs cannot state a claim for a violation of the Establishment Clause because the laws at issue serve the valid secular purpose of insuring that educational institutions, their programs, faculty, and degree granting practices are legitimate based on an evaluation that does not implicate religion. Plaintiffs assert that the statutes mandate state approval to grant degrees and therefore subordinate the Church's responsibility to God in deciding how to properly educate students in religious teaching and excessively entangle the state in religion by establishing the standards for post-secondary religious education and to recognize student attainment.

Courts have long applied the "*Lemon* test" to determine whether a statute violates the Establishment Clause, and defendant urges this Court to follow suit. Pursuant to *Lemon*, a statute violates the Establishment Clause if (1) it has no secular purpose, (2) its primary effect advances or inhibits religion, or (3) it fosters an excessive entanglement with religion. *Lemon v. Kurtzman,* 403 U.S.

602, 612-13 (1971).[1] The *Lemon* test remains operative in this Circuit. *Doe v. Elmbrook Sch. Dist.*, 687 F.3d 840, 849 (7th Cir. 2012), *cert. denied,* 134 S. Ct. 2283 (2014).

The statutes at issue here neither advance nor inhibit religion. Maintaining minimum educational standards in all schools constitutes a substantial state interest and secular purpose. *See Wisconsin v. Yoder,* 406 U.S. 205, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972); *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L. Ed. 1070 (1925); *New Jersey State Bd. of Higher Educ. v. Shelton College,* 448 A.2d 988, 996, 90 N.J. 470 (N.J. 1982). The issuing of "degrees" as opposed to some other articulation of student attainment is not a mandate of religious doctrine. Moreover, the regulatory scheme evaluates educational institutions on secular criteria against the institution's own stated objectives and thus does not involve excessive entanglement. *See* 23 Ill. Adm. Code 1030.30(a)(1).

Plaintiffs contend that this Court should follow the Supreme Court's ruling in *Hosanna-Tabor v. Evangelical Lutheran Church and School v. Equal Employment Opportunity Commission, et al.*, 132 S. Ct. 694, 181 L. Ed. 2d 650 (2012). *Hosanna-Tabor*, however, is not directly on point and does not articulate a bright line rule applicable in this situation. In that case, the Supreme Court allowed a "ministerial exception" to employment discrimination claims because the Establishment Clause prohibits governmental involvement in ecclesiastical decisions such as requiring a church to accept or retain an unwanted minister, or punishing a church for failing to do so. *Id.* at 706. The Court reasoned that "[s]uch action interferes with the internal governance of the church, depriving the church of control over the selection of those who will personify its beliefs." *Id.* The case at bar is distinguishable in that the statutes at issue here do not require a church to retain or discharge any religious personnel. Instead, the statutes at issue here require faculty to have minimum credentials in

---

[1] While lower courts continue to apply the *Lemon* test, *see, e.g.*, *Doe v. Elmbrook Sch. Dist.*, 687 F.3d 840, 849 (7th Cir. 2012), *cert. denied,* 134 S. Ct. 2283 (2014), members of the Supreme Court have been questioning its continued application, though doing so without articulating a replacement. *See, e.g., Van Orden v. Perry*, 545 U.S. 677, 686 (2005); *Utah Highway Patrol Ass'n v. Am. Atheists, Inc.*, 132 S. Ct. 12, 14 (2011) (Thomas, J., dissenting on denial of writ of certiorari) (noting that "five sitting Justices have questioned or decried the *Lemon*/endorsement test's continued use").

order for the institution to issue degrees. Such an action does not interfere with the internal governance of the church.

Plaintiffs also rely on *HEB Ministries, Inc. v. Texas Higher Education Coordinating Board et al.,* 235 S.W.3d 627, 50 Tex. Sup. J. 1094 (Tex. 2007), to oppose dismissal. In that case, HEB Ministries was fined for awarding "certificates" and "diplomas" in "Biblical Studies" the court found that the fines violated the Establishment Clause because HEB Ministries was "offering religious instruction and recognizing attainment with certificates clearly reflecting that such instruction is religious." *Id.* at 649. Significantly for this Court's purposes, HEB Ministries did not complain of the statute's restriction on the use of the word "degree" and thus the Texas court did not consider whether the restriction was permissible. *Id.* at 661. Here, plaintiffs are seeking complete exemption from the statutes so that they may confer "degrees," which is an entirely different scenario than recognizing student attainment with certificates clearly reflecting that such instruction is religious. Indeed, plaintiffs attached to their First Amended Complaint a letter from the Board of Higher Education specifically stating that they may issue certificates and diplomas.

This case is more closely aligned with *New Jersey State Bd. of Higher Educ. v. Shelton College,* 448 A.2d 988, 996, 90 N.J. 470 (N.J. 1982), relied on by defendant. In *Shelton College,* the Supreme Court of New Jersey rejected an Establishment Clause challenge by a religious college whose power to confer baccalaureate degrees was revoked for noncompliance with the statutory requirements for conferring degrees. There, the court considered the constitutionality of a New Jersey statute similar to the one at issue here, mandating approval by the state prior to issuing degrees. *Id.* The statutes at issue in that case prohibited the granting of baccalaureate degrees by any institution that had not secured a license from the State Board of Higher Education. *Id.* at 932. The court found no Establishment Clause violation, noting that Shelton College had declined to participate in the licensing process, and thus "the allegation of excessive entanglement rests on speculation about the

7

manner in which these statutes and regulations might be applied." *Id.* at 998. The court observed that "one could imagine an unconstitutional application of this regulatory scheme," but found no evidence of unconstitutional application on the facts before the court. *Id.* Here, like in *Shelton College*, the Bible Colleges have not sought approval under the statute, and their allegations of entanglement therefore rest on unfounded speculation. Accordingly, this Court grants defendant's motion with respect to Count I.

*2. Count II – Free Exercise Clause*

Defendant argues the statutes and regulations at issue do not violate the Free Exercise Clause because they are neutral and generally applicable and thus the statutory scheme is subject only to rational basis review. Plaintiffs assert that, even if the statutes and regulations are neutral and generally applicable on their face, strict scrutiny should apply because the statutes call for an individualized assessment of plaintiffs' religious activity and they have alleged a hybrid rights claim. Defendant counters that the two exceptions to rational basis review set forth in *Employment Division v. Smith*, 494 U.S. 872, 884 (1990), do not apply to raise the level of scrutiny.

No Free Exercise violation results where a burden on religious exercise is the incidental effect of a neutral, generally applicable, and otherwise valid regulation, in which case the regulation need not be justified by a compelling governmental interest. *Smith,* 494 U.S. at 885. The regulations at issue here are facially neutral and generally applicable since they apply with equal force to secular and religious institutions. They neither discriminate against some or all religious beliefs nor do they regulate or prohibit conduct "because it is undertaken for religious reasons." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 532, 113 S. Ct. 2217, 124 L. Ed. 2d 472 (1993). The Supreme Court has determined that the requirement of general applicability is based on "[t]he principle that government, in pursuit of legitimate interests, cannot in a selective manner impose burdens only on conduct motivated by religious belief." *Id.* at 543.

In this case, the only educational institutions singled out in the statutes and regulations at issue are those schools exempt from regulation through the grandfather clauses and entirely religious institutions exempt under the Private Business and Vocational Schools Act of 2012. Thus, the statutes are neutral and generally applicable, and only subject to rational basis review.

Plaintiffs contend that the Supreme Court's opinion in *Hosanna-Tabor*, discussed above, controls this Court's analysis of the Free Exercise claim. This Court disagrees that *Hosanna-Tabor* provides the controlling analytical framework for the same reasons discussed above regarding the Establishment Clause. A "ministerial exception" is not mandated where the state is not dictating which individuals a religious entity must hire or retain. Because *Hosanna-Tabor* was an employment discrimination case under Title VII, the ultimate result of the litigation, if carried to its logical end, would have been a court dictating that a religious entity must rehire a particular individual. Clearly such an action would violate both the Establishment Clause and the Free Exercise Clause because a court would be mandating internal church governance by forcing the religious institution to employ an unwanted minister. *See Hosanna-Tabor*, 132 S. Ct. at 706. As the Court reasoned, "[t]he present case, in contrast [to *Smith*], concerns government interference with an internal church decision that affects the faith and mission of the church itself." *Id.* at 707. Here, the statutes at issue do not interfere with an internal church decision affecting the faith or the mission of the church itself. Instead, by setting a statewide standard for conferring a "degree," the statutes and regulations incidentally affect one way in which a religious educational institution might elect to describe student achievement.

In *Smith*, the Supreme Court described two exceptions to rational basis review for neutral generally applicable laws: (1) "a hybrid rights claim," where an individual or organization's Free Exercise rights are burdened in addition to another constitutionally protected right such as freedom of expression or association; and (2) the statutes call for an individualized governmental assessment

9

of the reasons for the relevant religious conduct. *Smith*, 494 U.S. at 881, 884.[2] Neither exception applies to the statutes and regulations at issue here.

This Court has already rejected plaintiffs' Establishment Clause claim and, as set forth below, plaintiffs' claims under freedom of association, expression, and equal protection are equally inadequate. "[A] plaintiff does not allege a hybrid rights claim entitled to strict scrutiny analysis merely by combining a free exercise claim with an utterly meritless claim of the violation of another alleged fundamental right." *Civil Liberties for Urban Believers, et al. v. City of Chicago,* 342 F.3d 752, 765 (7th Cir. 2003) (quoting *Miller v. Reed,* 176 F.3d 1202, 1207-08 (9th Cir. 1999), and collecting cases). The statutes and regulations at issue are not of the type of individualized assessment warranting heightened scrutiny. The evaluation criteria set forth in the statutes are secular and do not require inquiry into the reasons for religious practice. Instead, the criteria seek to determine the institution's capability to carry out the education that it is purporting to provide based on its finances, transparency, and training. This Court finds that maintaining minimum educational standards for the conferring of degrees is a secular state interest of sufficient importance to pass rational basis review. Accordingly, this Court grants defendant's motion as to Count II.

*3. Count III – Freedom of Speech*

Plaintiffs claim that the state is unconstitutionally restricting their ability to accurately describe the nature of the Bible Colleges' curricula by regulating the use of the terms "Bachelor's," "Master's," or "Doctorate" degrees. Defendant argues that plaintiffs fail to state a claim for a violation of their Freedom of Speech because the use of the word "degree" is not religious speech activity. Defendant further contends that plaintiffs' rights to teach, worship, and express religious ideas are unaffected by the statutes at issue.

---

[2] *Smith* is relevant only for its analytical framework since it involved a criminal statute regulating the use of peyote, which is not factually instructive for the case at bar.

10

The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws "abridging the freedom of speech." U.S. Const., Amend. 1. Plaintiffs cite the Supreme Court's recent decision in *Reed v. Gilbert*, 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015), for the proposition that content-based speech is presumptively unconstitutional and subject to strict scrutiny. In *Reed,* the Supreme Court relied on strict scrutiny to strike down the defendant town's Sign Code, which restricts and identifies categories of signs based on the type of information they convey. *Id.* In *Reed,* the Supreme Court reiterated that "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or the message expressed." *Id.* at 2227. The Court in *Reed* reasoned that: "The Town's Sign Code… singles out specific subject matter for differential treatment, even if it does not target viewpoints within that subject matter… That is a paradigmatic example of content-based discrimination." *Id.* at 2230.

The statutes and regulations here do not differentiate between subject matter in the same way. This case is more closely aligned with the line of reasoning in *United States v. American Library Ass'n*, where the Supreme Court held that a heightened standard of scrutiny is inapplicable if the government is providing a public service that by its nature requires evaluations of, and distinctions based upon, the content of speech. 539 U.S. 194, 204-05, 123 S. Ct. 2297, 156 L. Ed. 2d 221 (2003). That decision gave public libraries broad discretion to decide what material to provide to their patrons. *Id.* A California District Court applied this reasoning to the University of California admissions process of approving high school courses to determine student eligibility, finding the regulation constitutional because it was reasonably related to the government's goal of providing the public service and is not the product of government animus. *Association of Christian Schools Int'l v. Stearns,* 679 F. Supp. 2d 1083, 1098 (C.D. Cal. 2008).

The Western District of Texas applied the same reasoning in *Institute for Creation Research Graduate School v. Texas Higher Education Coordinating Board*, 2010 WL 2522529 (W.D. Tex. June 18, 2010), which is closer to the case at bar. In that case, the plaintiff claimed that the Texas Higher Education Coordinating Board violated the Establishment Clause, Free Exercise Clause, and Free Speech Clause by determining that a proposed master of science degree program from a "Biblical scientific creationist viewpoint" could not be designated a "degree." The Texas court rejected all of the claims, finding that "[t]he Board, in order to protect Texas citizens and ensure the reliability of degrees earned within the State's boarders, is charged with reviewing the curricula of proposed degrees to be offered by institutions of higher education so that it may determine whether those degrees are substandard or fraudulent." *Id.* at *13.

The use of the terms "bachelor's," "master's," or "doctorate" degree by themselves do not trigger strict scrutiny. Courts, including the Supreme Court, that have considered the use of educational terms similar to the ones at issue here have found them to be commercial speech subject to a lower standard of scrutiny. *See Ibanez v. Florida Dept. of Bus. & Prof. Regulation,* 512 U.S. 136, 142 (1994) (holding that the use of initials or a designation purporting to indicate educational credentials or professional licensure is a form of commercial speech); *Nova University v. Educational Institution Licensure Commission,* 483 A.2d 1172, 1183 (D.C. Ct. of Appeals, 1994) (finding that degree conferral is business conduct). Here, the factual basis alleged for a free speech violation is the same as for the Religion Clauses and passes constitutional muster for the same reasons. Defendant's motion is granted as to Count III.

*4. Count IV – Freedom of Association*

The Supreme Court "has recognized that the right to engage in activities protected by the First Amendment implies 'a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.'" *Board of Dirs. of Rotary Int'l v.*

12

*Rotary Club of Duarte*, 481 U.S. 537, 548 (1987) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984). Plaintiffs contend that they are voluntary religious associations organized to assist in the expression and dissemination of religious doctrine and that the regulations at issue impose penalties and withhold benefits from individuals because of their membership in a group. Defendant counters that if complying with state regulation for issuing degrees implicates religious schools' freedom of association, then it also implicates secular schools' freedom of association and, thus every school could claim exemption.

The regulations here do not impede plaintiffs' freedom of association. They do not mandate that plaintiffs employ particular individuals nor do they impede plaintiffs' religious expression. Plaintiffs are free to associate, to maintain anonymity from state intrusion, and to grant diplomas and certificates or otherwise describe their students' academic achievement in a manner that does not involve granting "degrees." *Hosanna-Tabor,* as defendant points out, protects a religious institution's autonomy in deciding who provides its ministry. *See Hosanna-Tabor*, 132 S. Ct. at 706. Neither party directs this Court to any relevant authority nor does this Court's own research reveal any instance where a court has found freedom of association to be implicated in state regulation of the conferring of degrees. Accordingly, this Court grants defendant's motion as to Count IV.

*5. Count VI – Equal Protection*

Both the Academic Degree Act and the Private College Act contain grandfather clauses, exempting institutions that have been in existence prior to 1945 and 1961, respectively (110 ILCS 1005/2; 110 ILCS 1010/4(a)), which plaintiffs contend creates a disparity of treatment between newer and older religious schools. Plaintiffs assert in Count VI that the grandfather clauses impermissibly convey that older schools are more "legitimate" or "state approved" because those schools can grant degrees. Defendants argue that plaintiffs cannot state a claim under the Equal Protection Clause because no fundamental right and no suspect class are implicated in the

13

grandfather clauses of the statutes at issue. This Court agrees. The Seventh Circuit has held that "[g]randfather clauses--laws that… curtail the application of new rules to existing entitlements--protect expectation interests, which is enough to make them rational and so defeat challenge under the equal protection clause." *McCann v. City of Chicago*, 968 F.2d 635, 638 (7th Cir. 1992) (citing *Nordlinger v. Hahn*, 60 U.S.L.W. 4563 (U.S. June 18, 1992), and *New Orleans v. Dukes*, 427 U.S. 297 (1976)). Count VI therefore must be dismissed.

*6. Broader Exemption from the Private Business and Vocational Schools Act*

Lastly, plaintiffs seek to broaden the exemption allowed under the Private Business and Vocational Schools Act. The Act provides an exemption to institutions devoted entirely to the teaching of religion or theology. 105 ILCS 426/30; 23 Ill. Adm. Code 1095.20(b)(1). Plaintiffs here are essentially seeking to teach any subject in any manner and to describe student achievement in whatever way they choose, entirely free from government oversight, under the auspices of religious freedom. They should seek the exemption through the legislative process rather than by injunction. Such a result simply is not compelled by the First Amendment and plaintiffs' allegations to the contrary are unpersuasive and not in keeping with this Court's finding with respect to the remainder of the complaint.

**Conclusion**

Based on the foregoing, this Court grants defendant's Motion to Dismiss [24] and dismisses the case in its entirety. Civil case terminated.

IT IS SO ORDERED.

Date: March 28, 2016

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge